Karen N. Wilson-Robinson
*karen@wilsonbrownlawyers.com*
**WILSON & BROWN, PLLC**
629 Fifth Avenue, Suite 225
Pelham, New York 10803
Telephone: (646) 498-9816
Facsimile: (718)425-0573

Gayle M. Blatt* (CA State Bar No. 122048)
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA  92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

*\*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff*
*and the Proposed Classes*

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Erin Spencer, on behalf of herself and a class of others similarly situated, | Civ. No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| NURTURE, INC., a New York corporation, | |
| Defendant. | |

1

## CLASS ACTION COMPLAINT

Plaintiff Erin Spencer, of Citrus Heights, California, on behalf of herself and all others similarly situated, and as against Defendant Nurture, Inc. ("Nurture" or "Defendant"), alleges the following based upon personal knowledge as to herself and her own actions, and, as to all other matters, on investigation of her counsel and information and belief:

## INTRODUCTION

1.      Plaintiff brings this class action lawsuit because Nurture sold commercial baby foods despite being aware, based on its own internal testing, that many ingredients in those foods contained neurotoxic chemicals such as inorganic arsenic, lead, cadmium and/or mercury at levels that are dangerous for babies. Nurture provided internal test results to a Congressional Subcommittee investigating toxic metals in baby foods demonstrating as much. Unfortunately, this compelled disclosure comes much too late because Nurture did not disclose this critical fact to its potential customers.

2.      Babies have very high sensitivity to neurotoxic chemicals from conception through age 2 because "[t]heir brain is forming rapidly, and so when they're exposed to metals that can interrupt those natural processes, the impacts range from behavioral problems to aggression to IQ loss and all kinds of cognitive and behavioral deficits that can persist throughout life."[1] "Pound for pound, babies

---

[1] https://www.cnn.com/2021/02/04/health/baby-food-heavy-metal-toxins-wellness/index.html (last visited Aug. 9, 2021) (quoting Jane Houlihan, National Director of Science and Health, Healthy Babies Bright Futures).

get the highest dose of these heavy metals compared to other parts of the population . . . [s]o the consequences are serious."[2]

3.      The Food and Drug Administration (FDA) and the World Health Organization (WHO) have declared inorganic arsenic, lead, cadmium, and mercury are dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.[3] Even low levels of exposure can cause serious and often irreversible damage to brain development.[4]

4.      Yet, Nurture does not list inorganic arsenic or heavy metals as an ingredient on its products' labels nor does it warn of their potential presence in its products.

5.      As a result, Nurture's omissions and labeling are deceptive, misleading, and false. Plaintiff was consequently unaware that the Products contained heavy metals and inorganic arsenic at levels unsafe for babies, and she would not have purchased the Products had the information been fully disclosed. Plaintiff was injured by paying for Products that, given the levels of toxins in the Products, had no value or diminished value that was less than what Plaintiff paid for them.

---

[2] *Id.*

[3] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury,* Staff Report ("**Subcommittee Report**" or "**SR**"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (internal citations omitted).

[4] *Id.*

## **PARTIES**

6.     Erin Spencer ("Plaintiff") is an individual residing at Citrus Heights, California and can be reached through her counsel at 625 Fifth Avenue, Suite 225, Pelham, New York, 10803. Plaintiff is a member of the Class defined herein.

7.     In October 2020 through March 2021, Plaintiff Spencer purchased from Amazon.com and Raleys.com some of the Products as defined herein, including Happy Baby Teething Wafers, Gentle Organic Blueberry and Purple Carrot Sitting Baby; Happy Baby Teething Wafers, Gentle Organic Teethers, Sweet Potato and Banana, Sitting Baby; Happy Baby Food Organic Pears, Squash and Blackberries; Happy Baby Sweet Potatoes, Organics Stage 1; Happy Baby Organics Apples and Spinach; Happy Baby Organic Apples and Sweet Potatoes; Happy Baby Organic Bananas, Pineapple and Avocado; Happy Baby Organic Pears and Squash; Happy Tot Organics Fiber, Protein Apples and Spinach Oat Bars; Happy Baby Creamies Organic Strawberry, Raspberry and Carrot; Happy Baby Yogis Organic Strawberry; Happy Tot Fruit and Veggie Blend, Pears, Blueberries and Spinach 4; Happy Tot Fruit Blend, Organic Bananas, Peaches, and Mangos + Super Chia 4; Happy Tot Fruit and Veggie Blend Organic Pears, Bananas, Sweet Potato, Pumpkin + Super Chia 4; Happy Baby Yogis, Organic Mixed Berries; Happy Tot Fruit, Yogurt, Grain Blend, Apples, Cinnamon, and Oats; Happy Baby Organic Apples, Kale and Avocados 2; Happy Baby Pears, Mangos and Spinach Organic 2; Happy Baby Bananas, Beets and Blueberries Organic 2; Happy Baby Pears, Organic Stage 1; Happy Baby Organics 2 Pears, Pineapple and Avocados; Happy Baby Organics Clearly Crafted Oatmeal Baby Cereal; Happy Baby Pears Organic Stage 1; Happy Baby Organics 2 Pears and Prunes; and Happy Baby Organic Apples, Sweet Potatoes and Granola 2.

8.    Plaintiff relied on the labels on the Products she purchased. She relied on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant in making her purchasing decision. Plaintiff was unaware that the Products contained inorganic arsenic or heavy metals at levels unsafe for babies and would not have purchased the Products or paid as much for them if that information had been disclosed. Plaintiff was injured and lost money by paying for contaminated Products that have no value or whose value was less than what she paid.

9.    Defendant Nurture Inc.'s principal place of business is 1 Maple Avenue, White Plains, New York 10605. Nurture produces multiple lines of food for infants, toddlers, children, and new mothers, including formula, cereal, baby food, snacks, meals, and organic food. Nurture food products are sold under the "Organics Happy Family" names of "Organics Happy Baby," "Organics Happy Tot," "Organics Happy Kid," and "Organics Happy Mama," and can be purchased online and at retail stores.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the class members are citizens of states different than Defendant.

11.    This Court has personal jurisdiction over Defendant because Defendant regularly sells and markets products in New York and conducts business in this District. This Court also has personal jurisdiction over Nurture because Nurture is headquartered in this District.

12.    Venue is proper in this Court because Nurture conducts substantial business in this District, a substantial portion of the events complained of took place in this District, and this Court has general jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

13.    The market for baby foods is exceedingly large and growing. The baby foods market worldwide is projected to grow by $22.7 billion by the year 2025.[5]

14.    Along with the exploding baby food market is a surge in popularity of baby food products that are organic and otherwise "healthy" for babies.[6]

**Defendant Nurture**

15.    Nurture sources, formulates, manufactures, markets, advertises, labels, distributes, and sells the Products at issue in the litigation.

16.    Nurture advertised and continues to advertise the Products through commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

17.    Nurture claims on its website that it has "best-in-class testing protocols,"[7] "routinely test[][s] both our ingredients and finished products to assure they are safe and healthy for baby"[8] and "taste, test and thoroughly analyze every

---

[5]https://www.researchandmarkets.com/reports/338658/baby_foods_and_infant_for mula_global_market?utm_source=dynamic&utm_medium=BW&utm_code=b559s k&utm_campaign=1386712+Global+Baby+Foods+and+Infant+Formula+Market+ Assessment+2020-2025&utm_exec=joca220bwd.
[6] *Id.*
[7] https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/ (last visited Feb. 8, 2021).
[8] *Id.*

batch of food."[9]  It claims, "we have strict, self-imposed quality standards and reference other baby-specific sources like European Union (EU) baby food standards to inform our product development."[10]

18.    As alleged in more detail below, these claims and representations are misleading or false. Nurture does not warn potential customers, or list on its labels, that certain Nurture Baby Food Products contain inorganic arsenic and toxic heavy metals at levels that are unhealthy for babies.

### Toxins Found in Nurture's Baby Food Products

19.    Arsenic, lead, and cadmium, and mercury have been linked to cancer, chronic disease, and neurotoxic effects and are listed in the World Health Organization's top 10 chemicals of concern for infants and children.[11] They rank in the top ten on the Center for Disease Control's Agency for Toxic Substances and Disease Registry (ATSDR) Substance Priority List.[12] The ATSDR lists substances that "based on a combination of their frequency, toxicity, and potential for human exposure" pose significant threat to human health.[13]

20.    Arsenic is ranked at the top of the ATSDR. "There is some evidence that exposure to arsenic in early life (including gestation and early childhood) may increase mortality in young adults."[14]

---

[9] https://www.happyfamilyorganics.com/our-mission/going-beyond-organic-standards/ (last visited Feb. 8, 2021).

[10] https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/ (last visited Mar. 8, 2021).

[11] https://www.who.int/ceh/capacity/heavy_metals.pdf (last visited Feb. 8, 2021).

[12] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).

[13] *Id.*

[14] https://www.atsdr.cdc.gov/PHS/PHS.asp?id=18&tid=3#bookmark01 (last visited Feb. 8, 2021).

21.     The FDA has set the maximum allowable level of inorganic arsenic for human consumption in bottled water at 10 parts per billion ("ppb"), and the EPA, WHO, and European Union have set it at that level for drinking water.[15]

22.     With regard to baby food, the FDA has finalized only one metal standard for one narrow category of baby food, a 100 ppb inorganic arsenic standard for infant rice cereal.[16]

23.     Lead ranks second on the ATSDR list.[17] The American Academy of Pediatrics and the Centers for Disease Control and Prevention state that there is no safe level of lead in children.[18]

24.     Lead is associated with behavioral problems, decreased cognitive performance, delayed puberty, reduced postnatal growth, and is "especially dangerous to infants and young children."[19]

25.     Cadmium is seventh on the ATSDR list,[20] and is associated with decreased IQ and Attention-Deficit/Hyperactivity Disorder (ADHD).[21]

26.     The FDA and Environmental Protection Agency (EPA) limit cadmium to 5 ppb in bottled water and drinking water, respectively, while the WHO limits it to 3 ppb in drinking water.[22]

27.     Mercury is third on the ATSDR list.[23] Among other concerns, "higher

---

[15] SR at 13 (citing, Food and Drug Administration, *Arsenic in Food and Dietary Supplements, www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements*) (last visited Mar. 8, 2021).

[16] SR p. 6.

[17] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).

[18] https://www.ewg.org/release/congressional-investigation-popular-baby-foods-contain-high-levels-arsenic-lead-cadmium-and (last visited Feb. 6, 2021).

[19] SR at 11 (internal quotations omitted).

[20] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).

[21] SR p. 12.

[22] *Id.* p. 29.

[23] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).

blood mercury levels at 2 and 3 years of age were positively associated with autistic behaviors among preschool-age children."[24]

28.    The EPA limits mercury to 2 ppb in drinking water.[25]

29.    But all of these are present in the Products at levels well above what is considered safe for babies.

## U.S. House of Representatives and Healthy Babies Reports

30.    In 2019, Healthy Babies Bright Futures, an alliance of nonprofit organizations, commissioned a national laboratory to test baby food products, including Nurture's Happy Baby products for inorganic arsenic and heavy metals.[26]

31.    The testing found, *inter alia,* that Nurture products contained lead, or exceeded standards that the FDA and/or EPA had set for water.[27]

32.    The U.S. House of Representatives began investigating baby food product manufacturers, including Nurture, in 2020 and concluded that its "investigation proves that commercial baby foods contain dangerous levels of

---

[24] SR p. 13 (internal citation omitted).

[25] *Id.* p. 32.

[26] Healthy Babies Bright Futures, *What's In My Baby's Food?* (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLIS H_R6.pdf (last visited Feb. 22, 2021) ("**Healthy Babies**").

[27] *See, infra.* ¶¶ 20-27. Some of the Nurture products that the Healthy Babies investigation found exceeded standards are:  Oats & Quinoa Baby Cereal Organic Whole Grains with Iron; Oatmeal Baby Cereal, Clearly Crafted – Organic Whole Grains; Organics Sweet Potatoes-Stage 1; Sweet Potatoes-Stage 1; Organics Pears-Stage 1; Clearly Crafted Prunes Organic Baby Food; Simple Combos Apples, Spinach, & Kale; Love My Veggies Bowl-Cheese & Spinach Ravioli with Organic Marinara Sauce; Apples, Sweet Potatoes & Granola Clearly Crafted Organic Baby Food; Superfood Puffs-Apple & Broccoli Organic Grain Snack; Superfood Puffs Organic Grain Snack-Sweet Potato & Carrot; Organic Rice Cakes Puffed Rice Snack-Apple; and Organic Teethers Blueberry & Purple Carrot.

arsenic, lead, mercury, and cadmium" and that "[m]anufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and ***without any warning labeling whatsoever***."[28]

33.    It found that "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers . . . are adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix."[29]

34.    The Subcommittee's investigation revealed the following with respect to Defendant Nurture:

    a.  Nurture sells the products it tests, regardless of their toxic heavy metal content. In total, Nurture tested 113 final products and sold every product tested, regardless of how much inorganic arsenic or lead the product contained, and regardless of whether those metals exceeded its own internal standards.[30]

    b.  Even though the FDA set 100 ppb inorganic arsenic in infant rice cereal as a limit, Nurture set its internal standard for it at 115 ppb and sold products containing as much as 180 ppb inorganic arsenic.[31]

    c.  Nurture sold baby foods even when the food or its ingredients contained unsafe levels of lead. Nurture released products containing as much as 641 ppb lead and almost 20% of finished food products that it tested contained over 10 ppb lead.[32]

---

[28] SR p. 59 (emphasis added).
[29] SR p. 56 (emphasis added).
[30] *Id.* pp. 32-33.
[31] *Id.* p. 3-4.
[32] SR pp. 3, 22.  The Subcommittee called Nurture's internal lead standard "dangerously-high."

    d.  Nurture sold over 100 products that tested over 5 ppb cadmium, the EPA's limit for drinking water.[33]

    e.  Nurture sold 56 products that contained over 2 ppb mercury.[34]

35.    After publication of the Subcommittee Report, Nurture admitted that, "It's important to note that many of what were referred to as our internal 'standards' in the [Subcommittee] report were longer term targets or goals."[35] It also claimed that despite the data it had provided the Subcommittee, it has "never knowingly sold any products that contained levels above our standards."[36]

## Plaintiff Relied Upon Nurture's Representations in Purchasing the Products

36.    Plaintiff was a victim of Defendant's mislabeling of the Nurture Brand Baby Food, Products that contained inorganic arsenic and/or heavy metals.

37.    Prior to each purchase of the Products, Plaintiff viewed the labels on Nurture's Products. Each time, Plaintiff reasonably relied upon the labels, including omissions therefrom, on Nurture's Products before purchasing them. In particular, Plaintiff purchased Nurture's Products believing they would provide her child with nutritious organic baby food, as claimed on the label and packaging of the Products.

38.    Nurture's labeling claims were a material factor in Plaintiff's decision to purchase Nurture's baby food Products.

---

[33] *Id*. at 31.

[34] *Id.* at 32.

[35] https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/ (last visited Mar. 10, 2021).

[36] *Id.*

39.     At the point of sale, Plaintiff did not know, and had no reason to know, that Nurture's baby food Products were mislabeled including by omitting critical information as set forth herein.

40.     At the point of sale, Plaintiff did not know, and had no reason to know, that Nurture's nutrient content claims on the Nurture Brand Baby Food Products' labels were false, deceitful, and untrue as set forth herein.

41.     Plaintiff later learned that the Nurture Brand Baby Food Products contained levels of heavy metals and inorganic arsenic that are unsafe for babies. Plaintiff was deceived as a result of Nurture's false and misleading marketing practices. Plaintiff believed she was buying products that were providing her child with healthy baby food.

42.     Plaintiff would not have purchased or paid a price premium for the Nurture's Products had she known the Products contained the quantity or levels of heavy metals and inorganic arsenic that were included in the Product.

43.     Plaintiff is in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations with respect to the Products. Plaintiff and Class Members would have purchased other foods for their children if they had not been deceived by the misleading and deceptive labeling of the Nurture Brand Baby Food Products.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery.

At this time, Plaintiff brings this action and seeks certification of the following:

**National Class:**

> All persons within the United States who purchased Nurture's Baby Food Products from the beginning of any applicable limitations period through the date of class certification.

45.     Plaintiff Spencer (the "State of CA Plaintiffs") seeks certification of the following California **Sub-Class**:

> All persons in the State of California who purchased Nurture's Products from the beginning of any applicable limitations period through the date of class certification.

46.     Unless otherwise stated, the National Class and California Sub-class are collectively referred to as **Classes** and their members as **Class Members.**

47.     Plaintiff reserves the right to amend, alter, modify or change either or both Class definitions as required by the evidence and permitted by law.

48.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

49.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to tens of thousands. The number of members in the Classes is presently

unknown to Plaintiff but may be verified by Defendant's records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

51.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

a.   Whether the Nurture Brand Baby Food Products contain dangerous levels of heavy metals;

b.   Whether the Nurture Brand Baby Food Products contain dangerous levels of inorganic arsenic;

c.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Nurture Brand Baby Food Products are deceptive;

d.   Whether Plaintiff and Class Members were damaged by Nurture's conduct;

e.   Whether Nurture was unjustly enriched at the expense of Plaintiff and Class Members; and

f.   Whether Plaintiff and Class Members are entitled to injunctive relief

52.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiff are typical of other Class Members. All Class Members were comparably injured by Defendant's conduct described above, and there are no defenses available to Defendant that are unique to Plaintiff or any particular Class members.

53.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate class representative because her interests do not

conflict with the interests of other Class Members; she has retained class counsel competent to prosecute class actions and financially able to represent the Classes.

54.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refuses to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Nurture from selling or otherwise distributing the Products until such time that it can demonstrate to the Court's satisfaction that the Products are accurately labeled.

55.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other means of adjudication for this controversy. It would be impracticable for members of the Classes to individually litigate their own claims against Nurture because the damages suffered by Plaintiff and the members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

**Unjust Enrichment**

**(on behalf of Plaintiff and all classes)**

56.     Plaintiff fully incorporates paragraphs 1 through 55 as though fully set forth herein.

57.     Plaintiff brings this claim against Defendant on behalf of herself and the Class.

58.     Plaintiff and the other Members of the Class conferred benefits on Defendant by purchasing the Products.

59.     Defendant received the benefits to the detriment of Plaintiff and the other Members of the Class because Plaintiff and the other Members of the Class purchased mislabeled products that are not what they bargained for and did not provide the advertised benefit.

60.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other Members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other Members of the Class, because they would have not purchased the Products had they known the true facts.

61.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other Members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT II**

**Violations of New York Consumer Law for Deceptive Acts and Practices**

**N.Y. Gen. Bus. Law § 349**

**(On Behalf of Plaintiff and the National Class)**

62.    Plaintiff fully incorporates paragraphs 1 through 55 as though fully set forth herein.

63.    New York General Business Law ("NYGBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

64.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 349. The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 349, and the deception occurred in part within New York State.

65.    Defendant's baby food contains unhealthy and dangerous levels of Heavy Metals. Defendant knew or should have known that its baby food should not contain these levels of Heavy Metals and/or at the amounts found therein and that by manufacturing and providing for commercial sale baby food with toxic levels of Heavy Metals Plaintiff and the New York Subclass members were not getting healthy and/or nutritious food to help their children grow strong.

66.    Plaintiff and the New York Subclass members would not have purchased the baby food at issue for their children had they known the truth about the presence of dangerous levels of toxic Heavy Metals. There is no other use for Defendant's tainted products.

67.    Defendant violated the NYGBL § 349 by using dangerous levels of toxic Heavy Metals and failing to properly represent, both by affirmative conduct and by omission, the nutritional value of Defendant's baby foods.

68.     If Defendant had not sold baby food tainted with Heavy Metals, Plaintiff and the other New York Subclass members would not have suffered the extent of damages caused by Defendant's sales.

69.     Defendant's practices, acts, policies and course of conduct violate NYGBL § 349 in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff and the New York Subclass members at the time they purchased the Tainted Baby Foods, including the fact that Defendant's products contained dangerous levels of toxic Heavy Metals; and Defendant failed to disclose and give timely warnings or notices regarding the presence of dangerous levels of toxic Heavy Metals in its baby food products that were purchased by Plaintiffs and the New York Subclass members.

70.     The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence of unacceptable dangerous levels of Heavy Metals in its baby foods.

71.     Members of the public, including Plaintiff and the members of the New York Subclass, were deceived by and relied on Defendant's affirmative misrepresentations and failures to disclose.

72.     Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing baby food from Defendant. Said acts and practices are material. The sales of Defendant's Tainted Baby Foods in New York through such means occurring in New York were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 349.

73.     As a direct and proximate cause of Defendant's conduct, Plaintiff and New York Subclass members suffered damages as alleged above. Plaintiff also seeks injunctive relief as described herein.

74.    In addition to or in lieu of actual damages, because of the injury, Plaintiff and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

## COUNT III

## Violations of New York Consumer Law for Deceptive Acts and Practices
## N.Y. Gen. Bus. Law § 350
## (On Behalf of Plaintiff and the National Class)

75.    Plaintiff fully incorporates paragraphs 1 through 55 as though fully set forth herein.

76.    NYGBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

77.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 350. The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 350, and the false advertising occurred in part within New York State.

78.    Defendant's baby food contains unhealthy and dangerous levels of Heavy Metals. Defendant knew or should have known that its baby food should not contain these Heavy Metals and/or at the amounts found therein and that by manufacturing and providing for commercial sale baby food with toxic levels of Heavy Metals Plaintiff and the New York Subclass members were not getting healthy and/or nutritious food to help their children grow strong.

79.    Plaintiff and the New York Subclass members would not have purchased the baby food at issue for their children had they known the truth about the presence of dangerous levels of toxic Heavy Metals. There is no other use for Defendant's tainted products.

80.    Defendant violated the NYGBL § 350 by failing to properly represent, both by affirmative conduct and by omission, the nutritional value and safety of Defendant's Tainted Baby Foods.

81.    If Defendant had not sold baby food tainted with dangerous levels of Heavy Metals, Plaintiff and the other New York Subclass members would not have suffered the extent of damages caused by Defendant's sales.

82.    Defendant's practices, acts, policies and course of conduct violate NYGBL § 350 in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff and the New York Subclass members at the time they purchased the Tainted Baby Foods, including the fact that defendant's products contained dangerous levels of toxic Heavy Metals; and Defendant failed to disclose and give timely warnings or notices regarding the presence of dangerous levels of toxic Heavy Metals in its baby food products that were purchased by Plaintiff and the New York Subclass members.

83.    The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence of unacceptable dangerous levels of Heavy Metals in its baby foods.

84.    Members of the public, including Plaintiff and the members of the New York Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

85.    Such acts by Defendant are and were likely to mislead a reasonable consumer purchasing baby food from Defendant. Said acts and practices are material. The sales of Defendant's Tainted Baby Foods in New York through such means occurring in New York were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 350.

86.    As a direct and proximate cause of Defendant's conduct, Plaintiff and New York Subclass members suffered damages as alleged above. Plaintiff also seeks injunctive relief as described herein.

87.    In addition to or in lieu of actual damages, because of the injury, Plaintiff and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

## COUNT IV
### Violations of California Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*
### (on behalf of Plaintiff and the California Sub-Class)

88.    Plaintiff fully incorporates paragraphs 1 through 55 as though fully set forth herein.

89.    California Plaintiff Spencer brings this claim individually and on behalf of the California Sub-Class.

90.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for family or household purposes by the Class Members, and violated and continue to violate the following sections of the CLRA:

   a.    § 1170(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   b.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   c.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

91.    Plaintiff reserves the right to allege other violations.

92.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

93.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

94.    Pursuant to Civil Code § 1782(a), and attached as **Exhibit A**, California Plaintiff has concurrently provided a letter, sent by certified mail to Defendant, notifying it of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, California Plaintiff Spencer will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the CLRA.

95.    Pursuant Civil Code § 1780(d) of the Act, attached as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

96.    Pursuant to California Civil Code § 1780, California Plaintiff Spencer and the Class Members seek injunctive relief, their reasonable attorney fees and costs, and any other relief that the Court deems proper.

<u>**COUNT V**</u>

**Violations of the California Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

**(on behalf of the National Class and California Sub-Class)**

97.    Plaintiff fully incorporates paragraphs 1 through 55 as though fully set forth herein.

98.    California Plaintiff Spencer brings this claim individually and on behalf of the California Sub-Class.

99.    Defendant is a "person" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

100.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice" as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

101.   The acts omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

102.   Unlawful:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws: the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq., NY GBL §§ 349 and 350, and others.

103.   Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

104.   Unfair:  Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because, *inter alia,* Defendant made representations and omissions of material facts regarding the Products in their advertising and labeling. There is no societal benefit, only harm, from false advertising. Defendant was unjustly enriched by their false misrepresentations and omissions, that California Plaintiff Spencer and Class Members relied on. Defendant's conduct was immoral, unethical, unscrupulous, and substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

105.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to applicable sections of New York's General Business Laws and California's False Advertising Law and the Consumers Legal Remedies Act.

106.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

107.   As set forth herein, Defendant's claims relating to the ingredients stated on the Products' labeling, and their representations about quality of and ingredient supply, and product manufacturing and oversight, as stated above, are false, likely to mislead or deceive the public.

108.   Defendant profited from the false and deceptive practices and acts by Defendant and the unlawfully advertised and packaged Products to unwary consumers.

109.   California Plaintiff Spencer and the Class Members are likely to continue to be damaged by Defendant's deceptive trade practices because Defendant continues to disseminate misleading information on the Products' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

110.   Defendant's conduct caused and continues to cause substantial injury to California Plaintiff Spencer and the Class Members and they have suffered an injury in fact as a result of Defendant's unlawful conduct.

111.   In accordance with Bus. & Prof. Code § 17203, the Court should enjoin Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

112.   The Class Members seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts in violation of the UCL.

## COUNT VI

### Violations of California False Advertising Law ("FAL")

### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

### (on behalf of Plaintiff and the California Sub-Class)

113.    Plaintiff fully incorporates paragraphs 1 through 55 as though fully set forth herein.

114.    California Plaintiff Spencer brings this claim individually and on behalf of the National Class and California Sub-Class.

115.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

116.    It is also unlawful under the FAL to disseminate statements concerning personal property that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

117.    The required intent is the intent to dispose of personal property, not the intent to mislead the public in the dispositions of such personal property.

118.    As alleged herein, the advertisements, labeling, policies, acts, practices, and omissions of Defendant relating to the Products misled consumers acting reasonably as to Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, as stated above.

119.    California Plaintiff Spencer and the Class Members suffered injury in fact as a result of Defendant's actions as set forth herein because they purchased the Products in reliance on Defendant's false and misleading labeling claims and

25

omissions concerning the Products' quality, ingredient supply, and manufacturing and oversight (among other things), as stated above.

120.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and that omitted material information.

121.   As a direct and proximate result of Defendant's untrue and misleading advertising, Plaintiff and the Class Members have suffered injury in fact and have lost money.

122.   Defendant profited from the sale of the falsely and deceptively advertised Products to unwary customers.

123.   As a result, California Plaintiff Spencer requests that the Court order restitution and disgorgement of the funds by which Defendant was unjustly enriched.

124.   Pursuant to Cal. Bus. & Prof. Code § 17535, the Court should enjoin Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the putative classes proposed in this Complaint, respectfully requests that the Court

enter judgment as follows:

a.    Declaring that this action is a proper class action, certifying the putative classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the putative classes;

b.    Ordering Defendant to pay actual damages to Plaintiff and the other members of the putative classes;

c.    Ordering Defendant to pay restitution to Plaintiff and the other members of the putative classes;

d.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the putative classes;

e.    Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other members of the putative classes;

f.    Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the putative classes, as allowable by law;

g.    Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

h.    Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.


Dated: August 13, 2021                    Respectfully submitted,
PLAINTIFF Erin Spencer
By and through her attorneys,

/s/ Karen N. Wilson-Robinson
Karen N. Wilson-Robinson
*karen@wilsonbrownlawyers.com*
**WILSON & BROWN, PLLC**
629 Fifth Avenue, Suite 225
Pelham, New York 10803
Telephone: (646) 498-9816
Facsimile: (718) 425-0573

Gayle M. Blatt, Esq.

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA  92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232
**Gayle M. Blatt** *(pro hac vice* forthcoming)
*Email: gmb@cglaw.com*

*Attorneys for Plaintiff and the Proposed Classes*